LANCASHIRE INS. CO. *et al. v.* MAXWELL, Superintendent of Insurance.

(*Supreme Court, Special Term, New York County.* April 1, 1889.)

1. INSURANCE—FOREIGN INSURANCE COMPANIES—TRANSFER OF TRUST FUND—PARTIES.
    Code Civil Proc. N. Y § 448, provides that where the persons who might be made parties to an action are numerous, and it may be impracticable to bring them all before the court, one or more may sue or defend for the benefit of all. Plaintiff, a foreign insurance company, had deposited with defendant, the superintendent of insurance, an amount of securities in excess of the sum required by statute before it could do business in the state. By Laws N. Y. 1853, c. 466, § 23, this deposit is for the benefit of "policy-holders residing in the United States." Plaintiff also deposited money with trustees for the benefit of its policy-holders and creditors, as authorized by law. By the rules of the insurance department of another state where plaintiff did business, a deposit with the insurance department of another state was accounted a debt, and a deposit with trustees a credit, of an insurance company. Wherefore, plaintiff was not in a financial condition to be allowed to do business in that state, and was threatened with being excluded therefrom. In an action to compel defendant to transfer a portion of the amount deposited with him to the trustees, the complaint showed that there were about 5,000 policy-holders in the United States. *Held,* that such policy-holders need not be made parties defendant.

2. SAME—POWER OF COURT.
    The amount held by the superintendent of insurance in excess of the amount required by law to be deposited with him as a condition precedent to plaintiff's right to do business in the state, is a separate fund from that amount, and is held on a merely voluntary trust, and the court has power to direct such excess to be transferred to the other trustees, it not appearing that such a transfer will infringe the official discretion of the superintendent, as the beneficiaries are the same in both trusts, and the change will not affect plaintiff's standing in the state.

On demurrer to complaint.

Action by the Lancashire Insurance Company and others against Robert A. Maxwell, superintendent of insurance for the state of New York. Defendant demurs to the complaint.

*Lord, Day & Lord,* for plaintiffs.  *Charles F Tabor,* for defendant.

PATTERSON, J. The matters to be considered in this action arise upon a demurrer to the complaint. It is proper to say at the outset that many suggestions made on the argument by the learned counsel for the defendant cannot affect the determination of the questions of law involved. They may influence the ultimate disposition of the action, if appropriately set forth in an answer. They relate to the possible situation and condition of the plaintiff corporation, as justifying the refusal of the defendant to comply with the request or demand of the corporation plaintiff. If, for any reason existing, as matter of fact, that which is sought to be accomplished by this action ought not to be accorded to the plaintiffs by the decree of the court, that reason should be brought to the attention of the court in the proper manner, and by the proper pleading. All that we are concerned with now is the decision of the question of the right of the plaintiffs to the relief they demand, under the facts stated in the complaint and admitted by the demurrer.

It appears from the complaint that the Lancashire Insurance Company is a foreign corporation, doing business in the city of New York. It began its business here in the year 1872, and complied with those requirements of the statutes of this state which were prescribed as conditions precedent to its right to transact business within this state. Among those conditions is one

requiring the deposit with the superintendent of the insurance department of securities, and, as the principal place of business of the company was to be the city of New York, the amount required to be deposited was the minimum sum of $200,000, in securities, the value of which should be sufficient to produce a net yearly interest of 6 per cent. on that sum. That deposit was made. By the terms of section 23 of the act of 1853, c. 466, it is provided, among other things, that the deposit so made shall be "for the benefit and security of the policy-holders residing in the United States." At various times subsequent to the first deposit of $200,000 the insurance company augmented by further voluntary deposits the fund in the hands of the superintendent, until, at the time this action was begun, the value of the securities representing such fund amounted to about $779,500. In October, 1886, the Lancashire Insurance Company created a trust for the benefit of policy-holders and creditors, making the plaintiffs Bliss, Fairchild, and Mackay trustees, and deposited with them for the purposes of the trust a sum of money which has since been increased so that at the time of the commencement of this action it amounted to about $400,000. The creation of this trust was authorized by chapter 888, Laws 1871, and the trustees have been approved by the superintendent of the insurance department of the state of New York. We have, then, up to this point, two regularly authorized and constituted depositories of moneys or securities belonging to the insurance company, to be held in trust by such lawfully constituted and authorized trustees for beneficiaries named in the statutes.

The plaintiff corporation also carries on business in the state of Massachusetts, and is there subject to the supervision and control of a state superintendent of insurance. Certain rules of law, or rather regulations of the insurance department, are in force in that state, by which the right of a foreign insurance company to do business and to continue business, is to be determined. Among them is one to the effect that moneys or securities of any foreign insurance company deposited with the department of insurance of another state is to be counted as a debt, and not as an asset of such corporation; but all such deposits in the hands of other trustees are considered as assets, and not a debt, in the ascertainment of the financial condition and amount of unimpaired capital of such insurance company. Acting upon the rule thus generally stated, the Massachusetts authority has declared that the large sum deposited by the Lancashire Insurance Company with the department of insurance of the state of New York is a debt of the corporation; whereas, if it were in the hands of the trustees, under the deed of October, 1886, it would be counted as a credit, and in that situation the threat is made to exclude the corporation from doing business within the territory of the commonwealth of Massachusetts, the result of the application of the rule being that the corporation is not possessed of sufficient capital, or is not in a satisfactory condition as to solvency, by reason of so large an amount remaining in the custody of the New York superintendent of insurance. To meet the emergency and to prevent the exclusion of the company from the state of Massachusetts, the superintendent of the department of insurance in the state of New York has been applied to, to transfer to the trustees, under the deed of October, 1886, a portion of the securities or fund held by him. This has been refused, and the court is now appealed to, and is asked that it direct the transfer to be made. It appears by the complaint that there are in the United States about 5,000 holders of policies issued by the Lancashire Insurance Company. There are two grounds of demurrer—*First*, that there is a defect of parties, in that all the policy-holders of the Lancashire Company have not been joined as defendants in the action; and, *second*, that the complaint does not state facts sufficient to constitute a cause of action.

As to the first ground, I think it is covered by section 448, Code Civil Proc., which provides that where the case is one of a general or common interest, or

where the persons who might be made parties are very numerous, and it may be impracticable to bring them all before the court, one or more may sue or defend for the benefit of all.    Here there are several thousand policy-holders, and they are changing from day to day.    It would be absolutely impracticable to frame a suit to which each policy-holder should be a party; and the provision of the Code referred to is peculiarly appropriate to such a case as this, where the essential question involved seems to be one of law, of common interest to all policy-holders, and in which the interests of all may be adequately and efficiently represented by one or more of their number less than the whole.    It is undoubtedly a general rule that in suits affecting a trust the *cestuis que trustent* should be made parties, but an exception to that rule may well be made in a case of this character, and under the authority of the provision of the statute, when the rights and interests of the whole body of policy-holders may be determined by the court in passing upon the right of any one of them.    The beneficial purpose of the statute is well illustrated by this case.

Upon the *second* ground of demurrer the question arises of the power of the court to grant the relief prayed for, and this necessarily suggests an inquiry into the nature of the trust, the *status* of the fund represented by the securities in the hands of the superintendent of the insurance department, and the effect of transferring to the trustees under the October deed any portion of those securities.    The general jurisdiction of a court of equity to remove or change a trustee is not challenged, but it is claimed on the part of the defendant that the peculiar circumstances existing, and the nature of his relation to the securities deposited with him, are such as to take away the power of the court to exercise that jurisdiction in this case.    If all the securities now on deposit with the defendant, and belonging to the Lancashire Insurance Company, constituted one indivisible fund, required by law to be placed in his hands as a statutory trustee, there can be no doubt it would not be competent for the court to undertake to change the trustee, or to interfere with the defendant's custody and administration of the fund, so long as he was entitled to hold it to answer the purposes of the trust.    But it appears by section 23 of the general fire insurance act of 1853 that foreign corporations coming into this state to transact business, and who make the deposit required by law, have a right to procure from the superintendent of insurance the certificate authorizing them to do business.    When they have thus complied with the law, and obtained the certificate, all the requirements of that act respecting a deposit of securities have been fulfilled, and nothing more can be exacted of them by the superintendent in that regard; so that, when this plaintiff corporation complied with the law by making its first deposit of the required amount, it was entitled to do business, subject only to the authority of the superintendent to revoke its certificate or to refuse to grant a renewal certificate upon proper grounds, as provided by law.    But, as to all securities deposited by the foreign corporation in excess of the amount required by the statute as a condition of its doing business, such deposit in excess was simply a voluntary act on the part of the insurance company, and as to such excess the state superintendent did not become an official trustee, in the sense of holding those securities under a positive requirement of law.    He only held them in trust, in the same way as any other voluntarily-appointed trustee might hold them, for the purposes of the trust.    If that is the correct view of the subject, it would follow that of the securities in the hands of the state superintendent one portion, to-wit, so much as was required by the statute to be deposited as a condition upon which business should be done, is in the hands of the superintendent as an official trustee, and cannot be interfered with by the court.    It must remain in his hands, exempt from any power to take the custody or administration from him, but as to the excess, it being a mere voluntary deposit, the superintendent does not stand to it in the attitude

v.5 N.Y.s.no.3—26

·of a trustee appointed by the statute, with the exclusive right to be continued as trustee, despite all reasons of necessity which may demand for the advantage of all interested the substitution of some one in his stead, for the purpose of holding that excess. In a few words, the securities do not constitute one indivisible trust fund. Assuming all this to be true, and that the power to make the change of trustee resides in the court, that change should not be directed, if so doing would destroy or essentially modify the nature of the trust which was voluntarily created by the company by the deposit of the excess of securities referred to. The contention is now made by the superintendent of insurance that the removal of any part of the fund from his hands, and confiding it to other statutory trustees, would necessarily change the nature of the trust, and render the fund thus removed, or some part of it, applicable to other beneficiaries than those intended by the insurance company when the excess of securities was so deposited. I think it must be conceded that the intent of the depositor was that the securities so deposited should be for the same general purpose as those for which the original deposit of $200,000 was made. If, therefore, there is any radical or essential difference between the real nature of the trust created by the October deed and of that mentioned in section 23 of the act of 1853, the transfer asked in this suit ought not to be allowed. Looking at the facts as they are stated in the complaint, to ascertion what is the situation of the company, and what the trustees under the deed really hold their securities for, it is apparent there is no such radical difference. It is true that by section 23 of the act of 1853 the deposit required is stated to be for the benefit of policy-holders; that means policy-holders primarily. The securities in the hands of the superintendent would be liable, if the necessity arose for their being resorted to, first for policy-holders, then for creditors generally, (although not technically and in terms held in trust for them,) and, third, the residue would go to the company, or, upon the winding up of the business and the payment of all liabilities to policy-holders, the company itself would be entitled to withdraw the securities. Taking up the October deed, by which is constituted the trust in the individual plaintiffs, we find that while the words "policy-holders" and "creditors," are used, considering them in connection with the averment of the complaint, that, as matter of fact, there are and can be no creditors except those who are paid from month to month for the current expenses of the company, the trust actually administered by the trustees is, to all intents and purposes, one for the benefit of policy-holders. As the facts appear, there is but a technical, and not a substantial, difference. I am not satisfied that the transfer of the securities from the state superintendent to the trustees under the October deed would operate any real change in the nature of the trust, or cause the application of the securities to another purpose than that which was contemplated by the company when it made the deposits in question. I mean, of course, as matter of fact, and I think the facts should determine the question and that the nature of the trust should be considered with reference to the actual situation of the company as one with only nominal creditors other than policy-holders. But, if there is any doubt as to this, it can be overcome by a provision in a decree limiting the right of creditors until after the policies of the company at present outstanding expire, or all the claims of the present policy-holders are paid. This would not make a different trust from that created by the trust-deed, but would merely fix the rights of policy-holders and creditors as to the particular fund to be transferred, and such an arrangement is not incompatible with the terms of the trust-deed.

If I am right in the views above expressed, the conclusion properly to be reached is that all the securities deposited with the state superintendent over and above the amount required by section 23 of the act of 1853 are held upon a merely voluntary trust; that there is no requirement of law by the compulsion of which that excess must remain in the hands of the state superintend-

ent if another competent and lawfully-constituted trustee may take it; that, the law having authorized the individual plaintiffs, as other trustees, to hold securities for policy-holders and creditors, they are competent to take and hold this excess, and in this case, under the facts thus far disclosed, may do so without an infraction of the trust conditions upon which the deposits were made; and that a great and imperious necessity supervening, affecting most vitally the welfare of the company, and requiring a change of trustee, to avert a peril which seems to have been incurred only through the laudable desire of the company to increase the security given to those who do business with it, it is within the power of the court to direct it to be made. It is evident, as it seems to me, that the mere change of custody of the securities cannot affect the standing of the company within this state, so far as anything now appears. In the hands of the trustees, under the October deed, the amount transferred to them from the superintendent would still be counted as capital, and the purposes of the statute relating to the ascertainment of what has not inappropriately been called the "American capital" of the foreign corporation will be accomplished, notwithstanding the change. Nor do I see that there is anything, so far as was disclosed, which intrenches upon or interferes with the official discretion of the superintendent. If facts exist which indicate that the proposed course would interfere with his authority, power, or discretion in the discharge of his official duties, they, as I have said before, should be presented to the court in a proper form. But, with the material now before me I cannot conjecture that this would be so, for the subject under consideration at present relates to the change of place, and not of purpose of the deposit.

The learned counsel for the defendant, in the excellent and instructive presentation made by him of the case, insisted that the question of judicial power had been virtually disposed of by adjudications of this court and of the court of appeals, and he referred to *Ruggles* v. *Chapman*, 59 N. Y. 163, 64 N. Y. 557; *In re Insurance Co.*, 13 Hun, 115, affirmed 74 N. Y. 617, and other cases. An examination of those cases will show that they do not control the question raised here. They are undoubtedly final authority upon the point that the amount clearly required by the statute to be deposited with the state superintendent as a condition precedent to an insurance company doing business cannot be taken from his control, even for the purposes of distribution by a receiver upon the insolvency of such company; but they are limited in their application simply to that point. The court did not have before it in any of those cases, so far as I am able to detect, the subject of dealing with securities or funds other than those which, by express terms of the law, passed into the hands of and for administration by the statutory trustee. The ground of the decision of those cases is that the court has no power. to interfere with the possession or administration of securities or funds in the hands of a statutory trustee for possession and administration, (the question of misconduct being eliminated,) because that trusteeship is made and governed exclusively by the terms of the statute itself. The difference between those cases and this is obvious, if I am correct in the conclusion I have reached, that the fund is not an indivisible fund, but is separable into two amounts,—the one required by the statute to be deposited, the other that which was deposited voluntarily, without any obligation to make it arising under the statute. On the whole case, and without entering more into detail, I am of opinion that the demurrer must be overruled, with leave to the defendant to withdraw the demurrer within 20 days, upon payment of costs, and to answer, setting up whatever he may be advised will constitute reasons, in fact, for denying the relief demanded in the complaint.